630 So.2d 302 (1993)
STATE of Louisiana
v.
Tyrone T. EDWARDS.
No. 93-KA-579.
Court of Appeal of Louisiana, Fifth Circuit.
December 28, 1993.
*303 Harry J. Morel, Jr., Emile R. St. Pierre, Office of Dist. Atty., 29th Judicial Dist., Hahnville, for plaintiff/appellee.
Robert A. Chiasson, Chiasson & Chiasson, Destrehan, for defendant/appellant.
Before BOWES, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
The defendant, Tyrone Edwards, was charged by bill of information with being a convicted felon in possession of a firearm in violation of LSA R.S. 14:95.1. At arraignment he entered a plea of not guilty. A motion to suppress the evidence was heard and denied by the trial court. Subsequently, the defendant withdrew his not guilty plea and entered into a plea agreement with the state and plead guilty as charged while reserving his right to appeal the denial of the motion under State v. Crosby, 338 So.2d 584 (La.1976). In accordance with the terms of the plea agreement, the trial court sentenced the defendant to serve three years at hard labor without benefit of probation, parole or suspension of sentence. Additionally, a fine of $1000.00 was imposed, but suspended. The defendant brings this appeal seeking review of the trial court's judgment denying the motion to suppress. We affirm.

FACTS
On April 17, 1993, at approximately 4:18 a.m., Officer Mark Smith of the St. Charles Parish Sheriff's Office was dispatched to investigate a report of a suspicious vehicle occupied by two subjects and parked along the side of Louisiana Highway 18, near its intersection with I-310. When Officer Smith arrived on the scene, he observed a blue pick-up truck parked on the shoulder of the roadway near the line separating the lane of travel from the shoulder. In the truck were two men who appeared to be asleep. Officer Smith noticed that the passenger, later identified as Mr. Jolly, had an open "long-neck" bottle of beer in his lap.
Officer Smith attempted unsuccessfully to awaken the two individuals by knocking on the window of the truck. Officer Smith then attempted to open the driver's door of the truck, but it was difficult to open. The rattling of the door awakened the driver, Tyrone Edwards. Mr. Edwards helped Officer Smith to open the door which was apparently unlocked but "hung up." Officer Smith requested identification and ask if there was a problem. In response to the officer's question, both men admitted that they were drinking for quite some time and had pulled over to "sleep it off".
After the two men produced their driver's licenses, Officer Smith ran each name through the police computer. Through that check Officer Smith received information over his police radio that the defendant had a previous murder conviction. At that same moment defendant advised Officer Smith of the murder conviction.
At that point Officer Smith ordered the defendant to exit the truck so that a pat down search for weapons could be conducted. The defendant stumbled while exiting the truck and exhibited other signs of intoxication. When asked about weapons, the defendant told Officer Smith that there was a.22 caliber rifle located behind the seat of the truck which he owned. For safety purposes before retrieving the gun, Officer Smith instructed the defendant to step to the rear of the truck and the passenger to place his hands on the dashboard. The officer then seized the rifle from behind the seat of the truck and requested the assistance of a backup unit before unloading the rifle.
After the responding officer arrived on the scene, he ordered Mr. Jolly to exit the truck. Officer Smith advised the defendant of his Miranda rights and the defendant started "acting as if he was going to get sick." When the defendant regained his composure, *304 the officer ordered him to place his hands on the truck. Because the defendant would not comply with that order, Officer Smith forcibly placed the defendant against the truck, secured his hands behind his back and conducted a pat down search. The search revealed a .25 caliber pistol inside his sock. It is that weapon which was used as the basis of this prosecution. The defendant was again advised of his Miranda rights and placed under arrest for illegal possession of a firearm.
On appeal the defendant argues that the trial court erred in denying the motion to suppress. He asserts the evidence was obtained pursuant to an illegal investigatory stop and arrest.
Both the Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution require that a "seizure" of a person by a law enforcement official be founded upon an objective justification. When the "seizure" takes the form of an arrest, the police officer must have probable cause to believe that the person arrested has committed an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Sims, 426 So.2d 148 (La.1983); See also LSA-C.Cr.P. art. 213. To temporarily detain a person for purposes of investigation, the officer must have a reasonable suspicion that the person is committing, has committed, or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Sims, supra; See also LSA-C.Cr.P. art. 215.1.
However, law enforcement officials do not need reasonable cause or probable cause to detain each time they encounter a citizen, for not all police-citizen contact involves a "seizure." Policemen enjoy the same liberty possessed by every citizen to address questions to other persons. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Sims, supra. A person is "seized" within the meaning of the Fourth Amendment only when that person either submits to the police show of authority or is physically contacted by the police. California v. Hordari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). A person is seized within the meaning of Article 1, Section 5 of the Louisiana Constitution when that person is either "actually stopped" or when an "actual stop" of the person is "imminent." State v. Belton, 441 So.2d 1195 (La.1983); cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). A person has not been "actually stopped" unless he submits to a police show of authority or is physically contacted by the police. An "actual stop" of the person is "imminent" only when the police come upon a person with such force that, regardless of the person's attempt to flee or elude the encounter, an actual stop of the person is virtually certain. State v. Tucker, 626 So.2d 707 (La. 1993).
Additionally a limited frisk or patdown weapons search incident to an investigatory stop may be conducted in order to prevent harm to the police officers and ensure their safety. State v. Wade, 390 So.2d 1309 (La.1980), cert. denied, 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 848 (1981). The circumstances under which an officer may make such a pat-down for weapons must be based on whether or not a reasonably prudent man would be warranted in the belief that his safety or that of others was in danger. Terry v. Ohio, supra; State v. Keller, 403 So.2d 693 (La.1981). Such belief "is not reasonable unless the officer is `able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.'" State v. Keller, 403 at 697, citing Terry v. Ohio, supra, and Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917, 935 (1968). It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a substantial possibility of danger. State v. Hunter, 375 So.2d 99 (La.1979).
In the instant case, the officer approached a truck parked on the side of the road in which two men were asleep. His purpose was to investigate. When he was unable to awaken the occupants by knocking, he attempted to open the unlocked truck door. Up to this point, there was no force used, nor demands made upon the defendant. Thus, there was no seizure for which probable cause or reasonable cause was necessary.
*305 The officer had difficulty awakening the defendant and smelled alcohol on the defendant's breath when he did awake. The defendant volunteered that he had been drinking and pulled over to "sleep it off". We find that the officer had reasonable cause to believe the defendant had been driving while intoxicated. Therefore, at that point the officer could legally request identification.
Given the knowledge obtained by Officer Smith that the defendant was a convicted murderer, we find that a pat down search was justified. The weapon found in the defendant's sock was sufficient to support the charge that the defendant was a convicted felon in possession of a firearm. Consequently, defendant's arguments regarding the legality of the seizure of the second weapon from the truck are irrelevant.
Our review of errors patent on the record shows that the defendant was not given credit for time served in accordance with LSA-C.Cr.P. art. 880: State v. Sherman, 532 So.2d 908 (La.1988). Accordingly, the conviction is affirmed. The sentence is affirmed, but amended to give defendant credit toward service of his sentence for time spent in actual custody prior to imposition of sentence in compliance with the mandatory terms of LSA-C.Cr.P. art. 880.
CONVICTION AFFIRMED, SENTENCE AMENDED AND AS AMENDED AFFIRMED.